O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **MICHAEL CARDENAS, ET AL ,** | ) | **CASE NO. SACV 10-473 DOC (FFMx)** |
| **Plaintiff(s),** | ) | |
| | ) | |
| **v.** | ) | **AMENDED ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **MCLANE FOODSERVICES, INC. ET AL,** | ) | |
| **Defendant(s).** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

_____

Before the Court are Plaintiffs' Motion for Summary Judgment (Dkt. 214) and Defendant McLane Foodservice, Inc.'s Motion for Partial Summary Judgment Against Plaintiffs Regarding Piece-Rate Pay Formula Claims, Meal and Rest Break Claims and PAGA Claims (Dkts. 218, 224). The Court has considered the moving, opposing, and replying papers, as well as oral argument, and GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion and DENIES Defendant's Motion.

## I. Background

Plaintiffs are a group of thirty-nine current and former employees of Defendant McLane

FoodService, Inc. ("MFI" or "Defendant"), who allege that MFI, a motor carrier, by and through its parent company McLane Company, Inc., instituted policies that deprived Plaintiffs of their statutory right to periodic meal breaks, periodic rest periods, full compensation for time spent "waiting for clients to arrive and accept the delivery of goods," and accurate wage statements/payroll records when they worked as truck drivers for MFI.  First Amended Complaint ("FAC"), ¶¶ 3-4.

Plaintiffs filed their original complaint on March 12, 2010 in Orange County Superior Court, and MFI timely removed to this Court (Dkt.1).  Plaintiffs filed their First Amended Complaint on May 12, 2010, alleging that MFI's conduct violated the Private Attorney General Act, Cal. Labor Code § 2699, *et seq.,* which allows an "aggrieved employee" to bring suit against an employer for violations of most Labor Code provisions; and  (2) California's Unfair Competition Law, Cal. Bus & Prof. Code § 17200.

Defendant MFI brings its Motion for Partial Summary Judgment as to the following issues: (1) the lawfulness of MFI's Piece-Rate pay formula; (2) the preemption of Plaintiffs' meal and rest break violation allegations under the Federal Aviation Administration Authorization Act; (3) Plaintiffs' ability to recover under the UCL for Restitution; and (4) Plaintiffs' failure to exhaust administrative notice requirements of their PAGA claim as to Tracy, California employees.  Plaintiffs' Motion for Summary Judgment asserts that (1) MFI's Piece-Rate pay formula is not lawful and that (2) their rest and meal break claims are not preempted by the Federal Aviation Administration Authorization Act.

## II.    Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court must view the facts and draw inferences in the manner most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove

the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the opposing party must set out specific facts showing a genuine issue for trial; merely relying on allegations or denials in its own pleading is insufficient. *See Anderson,* 477 U.S. at 248-49. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

## III.    Discussion

### A.    Piece-Rate Pay Plan

According to Plaintiffs, MFI's piece-rate pay formula used to pay its drivers consists of the following components: (1) the number of cases of product delivered on a route; (2) the number of miles driven on a route; and (3) the number of delivery stops made on a route. Undisputed Fact from Plaintiffs' Statement of Uncontroverted Facts ("PUF") 3; Undisputed Fact from Defendant's Statement of Uncontroverted Facts, ("DUF"), 7. Plaintiffs allege that MFI's Piece-Rate Pay Formula failed to compensate them for duties they were obligated to perform pre- and post-shift. FAC, ¶ 24. Pre-shift, MFI employees are required to complete vehicle safety-checks, as well as pick up keys and manifests. Post-shift requirements include vehicle inspections and completion of paperwork. MFI classifies these pre- and post-shift duties as "Core Duties," which, according to MFI, are compensated pursuant to MFI's piece-rate pay formula. Plaintiffs further aver that they are not separately paid for "Non-Core" duties,

including rest breaks and the first 30 minutes of delay time when Plaintiffs must wait for customers. MFI does not dispute that it considers rest breaks part of its drivers' work day and contemplates that its piece-rate pay formula compensates for up to 30 minutes of delay. PUF, 1-2. It contends that it pays its employees for Non-Core duties at hourly or other rates of pay. As a result, MFI argues that in combination, Plaintiffs are paid significantly more than minimum wage for all their working time.

Plaintiffs insist that this piece-rate pay formula violates California law in that it does not separately compensate employees for the pre- and post-shift duties which they are required to perform. In other words, Plaintiffs assert that a piece-rate pay formula is only valid to the extent that it compensates an employee for all time worked, but that because the piece-rate formula does not include pre- and post-shift duties, but is limited to miles, stops, and products, it fails to adequately compensate Plaintiffs for their time actually worked. *See* Plaintiffs' Motion for Summary Judgment ("PMSJ"), 4.

In addition to MFI's contention that averaged out, its employees salaries would still constitute more than minimum wage, it also refutes Plaintiffs' argument by insisting that the pre- and post-shift duties are "integral and necessary" to employees' abilities to perform their job duties and are therefore compensated under the piece-rate formula. *See* Defendant's Motion for Partial Summary Judgment ("DMSJ"), 11. As a result, MFI insists that its pay formula *does* compensate employees for pre- and post-shift duties. MFI classifies its Core duties as "driving customer delivery routes, delivering products to customers, and performing pre-trip and post-trip activities." *See* DUF 5. Thus, MFI argues that because its pay formula compensates for all Core duties, and because Core duties include pre-and post-shift duties, Plaintiffs were therefore compensated under the piece-rate pay plan for those pre-and post-shift duties. Plaintiffs, however, maintain that regardless of whether MFI classifies pre-and post-shift duties as "Core," the pay formula itself–calculated based on miles, stops, and number of products–excludes by its very formula any pre- and post-shift duties. *See* Declaration of Aashish Y. Desai in Support of Plaintiffs' Opp'n to DMSJ, Ex. C. This, according to Plaintiffs, violated California law, which requires compensation for all hours worked.

Both parties move for summary judgment on this issue.

The Court begins with MFI's argument that the duties its employees are obligated to perform pre- and post-shift are "integral" to their completion of their other duties. This is undoubtedly a factual question for which MFI offers a great deal of evidence. However, MFI fails to offer any persuasive support for its legal premise: that time that is somehow "integral" to time for which an employee is paid need not be separately compensated under California law. Instead, MFI relies exclusively on a 1984 DLSE Interpretive Bulletin ("I.B.") 84-3--a bulletin that specifically addressed assembly workers. More importantly, I.B. 84-3 has no force of law, and MFI has not cited any cases adopting its unsupported interpretation.[1] Moreover, MFI's argument that it can evade its duty to directly compensate Plaintiffs for all time worked runs contrary to established case law, which the Court will address below. Accordingly, MFI's argument that its employees need not be separately compensated for integral tasks fails. Thus, MFI must rely on its argument that its piece-rate pay scheme does not violate California law because, when averaged out, Plaintiffs' earn more than minimum wage, or, alternatively, must show that its piece-rate pay formula *did* compensate Plaintiffs for all time worked.

Though MFI devotes some time to defending the legality of a piece-rate pay system under Wage Order 9, *see* DMSJ, 11, Plaintiffs do not appear to object to the legality of such a pay system generally, but challenge its legality in this specific context, where pre- and post-shift duties are alleged to be uncompensated. Plaintiffs rely heavily on *Armenta v. Osmose* to assert that an employer cannot avoid paying an employee for time worked by averaging productive time against unproductive time. *Armenta v. Osmose,* Inc., 135 Cal. App. 4th 314 (2005). *See* Plaintiffs' Opposition to DSMJ ("Plaintiffs' Opp'n"), 4-5. In *Armenta*, the California Court of Appeals found that an employer may violate California minimum wage laws when it uses an

---

[1] MFI's only defense of its reliance on I.B. 84-3 is to accuse Plaintiffs of similarly relying on unbinding authority. *See* Defendant's Reply in Support of DMSJ. That not only skirts the issue but is disingenuous. The DLSE Manual upon which Plaintiffs rest much of their argument has been relied upon by numerous courts, as described below, and continues to be featured on the DLSE website. Citations to the Manual differ dramatically from citations to an outdate and inapposite interpretative bulletin.

averaging method to determine employees' hourly wages. The plaintiffs in *Armenta* worked for a utility pole maintenance company, and their employer classified their work time as "productive," if relating directly to the maintenance of the utility poles, or "non-productive," if related to other duties, such as travel, meetings, and completion of paperwork. *Id.* at 317-18. This resembles MFI's classification of Core and Non-Core duties. The employer in *Armenta* defended its compensation for "productive" time only because it argued that the total amount compensated averaged into an hourly wage that exceeded California's minimum wage requirements. *Id.* at 319. In rejecting that argument, the court noted that California law "reveal[ed] a clear legislative intent to protect the minimum wage rights of California employees to a greater extent than federally." *Id.* at 322-23. More specifically, the court held that "[t]he averaging method used by the federal courts for assessing a violation of the federal minimum wage law does not apply" to California violations of minimum wage law. *Id.*

MFI argues that *Armenta* is inapposite because, *inter alia*, the case did not involve a piece rate payment scheme and it involved an employer violating its own explicit agreement to its employees. MFI directs the Court instead to *Medrano v. D'Arrigo Bros. Co. of California*, which it argues is more on-point. In *Medrano*, the Northern District Court analyzed a piece-rate pay plan that did not directly pay agricultural worker employees for travel and waiting time. The employer argued that the piece-rate payments included payments for travel and waiting time. The court held that it was not the pay scheme that determined the lawfulness of the arrangement, but whether employees were paid less than required under the relevant Wage Order. The court explained that "the dispositive issue for the purposes of the present motion is not whether [defendant] paid directly or indirectly for compulsory travel and waiting time, but rather whether its payment schemes, whether based on piece rate or an hourly wage, were insufficient pursuant to [the relevant wage order]." *Id.* at 1059. Thus, the court found that, "the threshold question for determining liability is whether payment during a pay period in fact fell below that required by [wage order] when compulsory waiting and travel time are taken into account." *Id.*

However, unlike the court in *Armenta,* the court in *Medrano* declined to consider a DLSE

opinion that this Court finds persuasive, even if it is not entitled to deference. *See Morillion v. Royal Packing Co.,* 22 Cal. 4th 575, 582 (2000). That January 29, 2002 DLSE opinion letter[2] carefully analyzed both federal and state law on averaging of wages for piece-rate pay formulas and held that "[a]veraging of all wages paid . . . within a particular pay period, in order to determine whether the employer complied with its minimum wage obligations is not permitted . . . for to do so would result in the employer paying the employees less than the contract rate for those activities . . . ." Jan. 29, 2002 DLSE Opinion letter.

Though *Armenta* did not involve a piece-rate pay formula, and involved an employer who violated an explicit agreement, those distinctions do not detract from the decision's holding that "[t]he averaging method used by the federal courts for assessing a violation of the federal minimum wage law does not apply" to California law-based claims. *Armenta*, 135 Cal. App. 4th at 323. More importantly, in *Ontiveros v. Zamora*, the Eastern District applied *Armenta* to a case that both involved a piece-rate scheme *and* a lack of an employer violating a wage agreement. 2009 WL 425962 (E.D. Cal., 2009). Though that decision dealt with the pleadings, rather than a motion for summary judgment, it nonetheless affirmed *Armenta*'s broader application and suggested that an employer relies upon an unlawful pay scheme if it fails to compensate non-piece-rate work as "all hours worked." *Id.*

Furthermore, with all respect to the district court, this Court also notes the persuasiveness of California state court decisions for interpretations of California state laws. Though neither the district court nor the state courts are controlling, this Court nonetheless finds the later-issued California cases more convincing, particularly given the *Medrano* court's decision not to consider the DLSE opinion letter that this Court finds persuasive and the *Medrano* court's lack of the benefit of the *Armenta* decision. Thus, this Court finds that a piece-rate formula that does not compensate directly for all time worked does not comply with California Labor Codes, even if, averaged out, it would pay at least minimum wage for all hours worked.

---

[2] The Court grants Plaintiffs' request for judicial notice of this opinion letter. The Court grants other requests for judicial notice by the parties to the extent relied upon in this Order and deems such other requests moot.

Having rejected MFI's argument that it need not compensate Plaintiffs for time not included in the piece-rate pay formula if the average wage would exceed minimum wage, the only remaining question is whether MFI's piece-rate pay formula *did* compensate Plaintiffs for all the time worked. MFI proffers 37 depositions which is argues "establish[] that Plaintiffs have at all relevant times known, understood, and agreed that MFI's piece-rate Pay Formula compensates them for their pre-trip and post-trip work . . . ." Defendants' Opp'n to PMSJ, 4-5. For example, one such declaration states "I have always known and understood that my Core Pay Formula compensation covers and pays me for all the time I spend performing all pre-trip and post-trip work . . . ." Defendants' Declaration of Manasseh Bartolome, ¶ 6. Many of these declarations contain almost *identical* phrasing. *See, e.g.*, Defendants' Manuel Partida Declaration ¶ 6 ("I have always known, understood, and agreed that my Core Pay Formula compensation covers and pays me for all of the time I spend performing all pre-trip and post-trip work . . . because such work is part of my driving-related duties."); Robert Scharer Declaration, ¶ 6 ("I have always known, understood, and agreed that my Core Pay Formula compensation covers and pays me for all of the time I spend performing all pre-trip and post-trip work . . . because such work is part of my driving-related duties."); Matt Smith Declaration, ¶ 6 ("I have always known, understood, and agreed that my Core Pay Formula compensation covers and pays me for all of the time I spend performing all pre-trip and post-trip work . . . because such work is part of my driving-related duties.").[3]

Yet MFI misunderstands the meaning of "compensates" or "covers." As discussed above, the Court rejects the idea that any "integral" work is covered under the piece-rate formula, as MFI's only basis for such an argument was an obsolete interpretative bulletin. Thus, it is irrelevant whether the pay formula was *intended* to compensate pre- and post-trip duties, or even if employees believed it covered those duties, if its formula did not actually directly compensate

---

[3] Plaintiffs dispute this claim; insisting that "Plaintiffs were **not** told that the Pay Formula was intended to compensate them for all the hours they worked." Plaintiffs' response to Defendant's Separate Statement of Undisputed Facts in Support of Plaintiffs' Opp'n to DMSJ. However, as the Court explains below, this issue is not material.

those pre- and post-trip duties. And it is undisputed that the Pay Formula consists of a calculation based on the number of cases of product delivered, the number of miles driven on a delivery route, and the number of delivery stops. DUF, 7; PUF, 3. Those components do not calculate for the pre- and post-shift duties and breaks identified by Plaintiffs. Plaintiffs also present undisputed evidence that MFI did not separately compensate Plaintiffs for those pre- and post-shift duties. *See, e.g.*, Deposition of William Jarvis ("Jarvis Dep."), 23, 24, 44; Deposition of Sonia Nunez ("Nunez Dep.") 12-13. As a result, no amount of evidence proffered by MFI about employees' understanding or expectations that the piece-rate formula was intended to compensate for pre- and post-shift duties can overcome the fact that, as described above, MFI did not separately compensate employees for pre- and post-shift time not calculated for in the piece-rate plan, in violation of California law.

Accordingly, the Court finds that there are no genuine issues of material fact for a jury to determine. It is undisputed that MFI's pay formula used a calculation consisting of miles, stops, and products–and did not separately compensate for pre- and post-shift duties. Even if MFI communicated to its employees that this piece-rate formula was intended to compensate for pre- and post-shift duties, the fact that it did not separately compensate for those duties violates California law. *See Armenta*. 135 Cal. App. 4th.

The Court therefore GRANTS Plaintiffs' Motion for Summary Judgment on the issue of liability only. MFI's Motion for Partial Summary Judgment on this issue is DENIED.

## B.     Preemption by the FAAAA

As an affirmative defense, MFI asserts that Plaintiffs' claims based on violations of California meal and rest break laws are preempted by the Federal Aviation Administration Authorization Act ("FAAAAA"). Under the FAAAA, any state law "related to a price, route or service of any motor carrier . . . with respect to the transportation of property" is preempted. 49 U.S.C. § 14501(c)(1). MFI argues that California's meal and rest break laws are preempted by the FAAAA because they have an impact on their prices, routes, and services. Plaintiffs contend that such a an impact is too attenuated to be preempted by the FAAAA. Moreover, Plaintiffs

assert that even if the FAAAA governs, the law also provides an exception for state laws related to the "safety regulatory authority of a State with respect to motor vehicles . . . ." 49 U.S.C. § 14501(c)(2)(A). Plaintiffs maintain that the FAAAA's safety exception for motor vehicles applies, as California's meal and rest break laws stem from safety concerns.

Both parties move for summary judgment on this issue.

### 1. Impact on Services Provided

In enacting the FAAAA, Congress aimed to eliminate the effects of patchwork state regulations which had caused " 'significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology, and curtail[ed] the expansion of markets.' H.R. Conf. Rep. No. 103–677, at 86–88 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1758–60." *See  Californians for Safe and Competitive Dump Truck Transp. v. Mendocna***,** 957 F. Supp. 1121 (N.D. Cal. 1997). MFI insists that the FAAAA preempts California's meal and rest break laws because compliance with those laws would have a significant impact on their "prices, routes, and services." They argue that even an indirect effect on their prices, routes, and services is sufficient to find preemption under the FAAAA.

In *Rowe v. New Hampshire Motor Transport Ass'n*, the Supreme Court clarified the FAAAA's preemptive reach. 552 U.S. 364 (2008). MFI insists that under *Rowe*, a law that has even an indirect effect on prices, routes, and services is preempted by the FAAAA. To be sure, the *Rowe* decision found broad preemption under the FAAAA, but it also found that state laws that "affect fares in only a 'tenuous, remote, or peripheral . . . manner,' may not be preempted. *Id.* at 995. The Court did not define where that line should be drawn. *Id.* at 995. Indeed, in *American Trucking Associations, Inc. v. City of Los Angeles*, the Ninth Circuit, in a post-*Rowe* decision, reaffirmed that though Congress intended the FAAAA to apply broadly, "'[a] state or local regulation is related to the price, route, or service of a motor carrier if the regulation has more than an indirect, remote, or tenuous effect on the motor carrier's prices, routes or services.'" 559 F.3d 1046, 1053 (9th Cir. 2009) (internal quotations omitted).

In *Mendocna*, the Northern District found that the FAAAA did not preempt California's wage laws, because they were not sufficiently related to carrier's prices, routes, and services.

957 F. Supp.  The Court carefully analyzed the legislative history of the FAAAA and found that Congress had not intended broad preemption.  *Id.* at 1126.  More specifically, "the legislative history of [the FAAA] does not establish that it was Congress's 'clear and manifest' intent to preempt state wage regulation; rather, it appears that Congress intended to preempt state law that more directly affects motor carrier prices and rates, such as entry controls, tariffs charged for transportation services and similar regulation."  *Id.*

More importantly, both parties overlook the fact that the Ninth Circuit *affirmed* the Northern District's holding in *Mendocna* and specifically held that "[t]he language and structure of the FAAA Act does not evidence a clear and manifest intent on the part of Congress to preempt the [California Prevailing Wage Law]."  *Californians for Safe & Competitive Dump Truck Transp. v. Mendocna*, 152 F.3d 1184, 1185 (9th Cir. 1998), *cert denied*.  The Court found that the wage laws in California qualified as state laws that had "no more than an *indirect, remote, and tenuous* effect on motor carriers" and, as such, were not preempted by the FAAAA. *Id.* (emphasis in original).  In doing so, the Court rejected the defendant's evidence that, *inter alia*, the wage laws increased their prices by 25% and caused them to adjust their routes as having "no more than indirect, remote, and tenuous" effects on defendant's prices, routes, and services.

MFI responds to the district court's *Mendocna* decision–and no doubt, had either party cited it, would respond to the Ninth Circuit decision as well--by arguing that it was pre-*Rowe*, and that *Rowe* fundamentally changed FAAAA preemption analysis to allow for preemption of state laws with even "indirect" impacts on prices, routes, and services.  Yet this is an incorrect reading of *Rowe* and of both *Mendocna* decisions.

The district court in *Mendocna* relied upon the Supreme Court's preemption standard described in *Morales v. Trans World Airlines, Inc.* 504 U.S. 374 (1992) (discussing preemption under the Airline Deregulation Act).  *See Mendocna*, 957 F. Supp. at 1126.  In *Morales*, the Court found that "[s]tate enforcement actions having a connection with, or reference to, airline 'rates, routes, or services' are pre-empted under [the ADA]."  *Morales*, 504 U.S. at 384. The Ninth Circuit also relied on *Morales*, and noted that *Morales* had held that even when a law "has

only an indirect effect on the rates, routes, or services" the FAAAA may preempt, but that some state action may have an impact that is "'too tenuous, remote, or peripheral a manner'" to be preempted by the FAAAA. *Mendocna*, 152 F.3d at 1188 (quoting *Morales*, 504 U.S. at 390). Likewise, the Supreme Court in *Rowe* relied almost exclusively on *Morales* in its decision; indeed, the quotation regarding "indirect" impacts, upon which MFI bases the entirety of its argument under *Rowe* was not original to that decision; it, too, came from *Morales*. *See Rowe*, 552 U.S. Thus, despite MFI's attempt to distinguish *Mendocna* and suggest an entirely new preemption doctrine post-*Rowe*, it simply misinterprets *Rowe*. To the contrary, *Rowe* reaffirmed the principle under *Mendocna* that state laws that only have a "'tenuous, remote, or peripheral" effect on prices, services, or routes may not be preempted under the FAAAA. *Id.* at 995.

Moreover, caselaw suggests that in the cases most closely resembling this one, including *Mendcona*, courts have rejected attempts to rely upon attenuated evidence purporting to show California wage laws' impact on prices, services, and routes and have found that the FAAAA does not preempt California's wage laws. A recent California appellate decision held that "[c]ase law supports finding that the effect of California's minimum wage law on a motor carrier's prices, routes, and services is too tenuous for preemption under the FAAAA." *People ex rel. Harris v. Pac Anchor Transp., Inc.*, __Cal. Rptr. 3d__, 2011 WL 1879209, * 6 (May 18, 2011). The court found that the FAAAA did not preempt in spite of evidence that the wage laws would increase the trucking company's operational costs. *Id.* at *1. Moreover, the California Court of Appeals has found that actions to enforce California wage laws governing meal and rest breaks were not preempted under the ADA–the statute analyzed under *Morales* for its identical language to the FAAAA. *Fitz-Gerald v. SkyWest Airlines, Inc.* 155 Cal. App. 4th 4th 411, 423 (2007); *see also Morales*, 504 U.S. The court rejected the defendant's argument that the state's laws resulted in "higher fares, fewer routes, and less service" as too "tenuous." *Fitz-Gerald*, 155 Cal. App. 4th at 423 n.7.

These cases clearly suggest a finding that, like other California wage laws, California's rest and meal break laws are not preempted under the FAAAA. MFI's evidence attempts to overcome that finding. MFI proffers a great deal of speculative evidence suggesting the impact

that compliance with California's rest and meal break laws would have on its prices, service, and routes.[4]  This evidence is highly speculative, and fails to persuade the Court that such an impact would necessarily result, or, alternatively, that it would be more than attenuated.  For example, MFI does not clearly establish from where it draws its baseline numbers.  *See* Plaintiffs' Opp'n to DMSJ, 14-15. To be sure, to comply with California break laws, MFI may choose to adjust its routes, or slightly modify its services in the ways it has suggested.  But just because MFI may make changes to its routes does not necessarily mean that California's break laws have more than an "indirect, remote, or tenuous effect" on these decisions.  The Court has concerns that MFI's evidence stretches plausibility–and the FAAAA–to suggest that nearly every state law would be preempted.

Nonetheless, Plaintiff offers little to rebut this shaky evidence.  As a result, the Court believes that the question of whether compliance with California rest and meal break laws impacts MFI's price, service, and routes is a genuine issue of material fact.  It is left to a fact-finder to weigh the competing evidence and to determine the impact–if any-- of California rest and meal break law on MFI's services, prices, and routes.

Accordingly, MFI's request for summary judgment on its FAAAA preemption affirmative defense is DENIED and Plaintiff's Motion for Summary Judgment on the FAAAA preemption issue is DENIED.

### 2.      Safety Exception

Having found genuine issues of material fact as to the existence of FAAAA preemption, the Court next turns to Plaintiffs' alternative argument that the FAAAA's motor vehicle safety exception precludes preemption.

Courts have explained that the safety exception to FAAAA preemption allows for state regulations that are "genuinely responsive to safety concerns," which requires a consideration of

---

[4] The Court does not describe MFI's evidence in detail because it was filed under seal, and is redacted in public documents.  Nonetheless, it notes in general terms–and without revealing any confidential information–that MFI's evidence is unconvincing and overly speculative.

whether the "regulator 'was acting out of safety concerns.'" *American Trucking Associations, Inc.*, 559 F.3d at 1053 (citing *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 442 (2002)). Making that determination requires looking to the "purpose and intent" of the law to decide whether it emerged out of concerns for safety. *Id.* at 1054; *see also Tillison v. City of San Diego*, 406 F.3d 1126, 1129 (9th Cir. 2005) ("The focus of the safety exception to preemption must be on the legislative intent and whether the legislature was acting out of safety concerns.").[5]

Plaintiffs contend that California's meal period and rest break laws fall under the ambit of the FAAAA safety exception, because the laws were enacted for the safety of employees working long hours without breaks–an issue of unique importance to employees operating dangerous motor vehicles. Indeed, in *Murphy v. Kenneth Cole Productions, Inc.*, the California Supreme Court noted that "health and safety considerations (rather than purely economic injuries) are what motivated the [Industrial Welfare Commission] to adopt mandatory meal and rest periods in the first place." 40 Cal. 4th 1094, 1113 (2007). MFI, however, argues that the Court in *Murphy* did not consider legislative history, and did not address motor vehicle safety specifically, as opposed to more general safety concerns.

As other courts have noted, "[t]here is little caselaw discussing the limits of the safety exception to federal preemption." *Tillison*, 406 F.3d at 1129. Therefore, in its original Order Granting in Part and Denying in Part the Court requested supplemental briefing on the narrow issue of whether the legislative history of the California rest and meal break laws either did or did not arise from considerations of public safety.

Plaintiffs presented this Court with a great deal of legislative history from the California Legislature and the Industrial Welfare Commission ("IWC") suggesting that the history of meal and rest break laws did emerge in part out of general public safety concerns. For example, the legislative history of the IWC's 1976 Wage Orders indicates that a "meal period is necessary for

---

[5] Notably, the Court emphasized a focus on whether the legislature was "acting out of safety concerns" but not whether they were acting out of *motor vehicle* safety concerns.

the welfare for employees" and that the "general health and welfare of employees requires periods of rest during long stretches of physical and/or mental exertion." Statement of Findings by the IWC of the State of California I Connection with the Revision in 1976 of Its Order Regulating Wages, Hours, & Working Conditions, Aug. 13, 1976 (Plaintiffs Ex. B at 14).[6]

Nonetheless, most of the evidence Plaintiffs present deals with the general public safety concerns underlying meal and rest break laws. This is insufficient to warrant applying the motor vehicle exception to preemption. *See Rowe*, 552 U.S. at 374 ("The [FAAAA] says nothing about a public health exception."). Indeed, the only evidence Plaintiffs have presented that specifically relates to *motor vehicle* safety concerns, as opposed to safety concerns generally, involved testimony by a representative of the Amalgated Transit Union and the Teamsters at a June 15, 2001 Public Meeting of the IWC on Wage Order 5-80, 1979.[7] That testimony described the difficulty of truck driving, the size and potential danger of the trucks themselves, and the risks of driver fatigue. Transcript of Public Meeting, IWC, June 15, 2011 (Plaintiff's Ex. F, at 4) (explaining that "rest breaks can provide the drivers with a chance to rejuvenate and provide them with the ability to concentrate more on the second half or period of their workday"). The testimony also elaborated on the high rates of fatigue among truck drivers and the high correlation between fatigue and accidents, calling fatigue a "significant safety issue for our workers" as well as a "significant safety issue for the public in general." *Id.* As Plaintiffs emphasize, the IWC later promulgated Wage Order 9-2001, regulating the conditions and wages of the transportation industry and mostly keeping intact the meal and rest break periods. Plaintiffs' Supplemental Briefing ("Plaintiffs' Supp."), 4.

Yet, despite the evidence Plaintiffs showcase suggesting that there were safety concerns present in the promotion of rest and meal break laws, Plaintiffs have not disclosed any evidence suggesting that the *purpose* of the laws was to promote motor vehicle safety. To the contrary, much of that same testimony Plaintiffs wish to highlight deals with workers' rights concerns.

---

[6] Plaintiffs' request for Judicial Notice of this exhibit is GRANTED.

[7] The Court GRANTS judicial notice of Plaintiffs' Exhibit F.

The testimony of one or two witnesses does not necessarily suggest that the IWC agreed with those expressed views; and it certainly falls far short of indicating that the very *purpose* of the laws was expressed by that limited testimony.[8]

Indeed, the Ninth Circuit has warned, "if too broad a scope were given to the concept of motor vehicle safety, the exception would swallow the preemption section itself or, at the very least, cut a very wide swath through it." *American Trucking Associations, Inc.*, 559 F.3d at 1054. Furthermore, "[i]t is not enough to say that the provision might enhance efficiency, or reduce some kind of negative health effects. The narrow question . . . is whether the provision is intended to be, and is, genuinely responsive to motor vehicle safety." *Id.*

Because the legislative history of California's rest and meal break laws does not indicate that the true purpose of the law was to protect motor vehicle safety, the Court does not apply the motor vehicle exception to the FAAAA. Accordingly, both parties' Motions for Summary Judgment as to the FAAAA preemption issue are DENIED.

## C. Restitution

MFI moves for summary judgment on Plaintiff' second cause of action seeking restitution under the UCL. This claim is late-filed, as it did not comply with the Court's Scheduling Orders.[9] Pursuant to this Court's Scheduling Order, all motions for summary judgment were required to be filed by April 18, 2011. In what the Court can only guess was an attempt to

---

[8] Defendant also points out that as recently as January 1, 2011, California's Labor Code was amended to provide for some exemptions for commercial drivers from state-defined meal break laws if they are covered by collective bargaining agreements protecting certain wage, work hour, meal period and other provisions. Cal. Labor Code. § 512 (e), (f). Thus, California now allows for different meal period standards for some commercial drivers through collective bargaining agreements. This certainly implies that motor vehicle safety was not a driving force behind those laws.

[9] The Court does not address Plaintiffs' allegations that MFI failed to meet and confer on this issue as well. Because the Court agrees with Plaintiffs that this claim cannot be brought, it need not consider the meet and confer debate.

circuit page-limit requirements and to demand multiple hearings for multiple summary judgment motions, the parties filed no fewer than a total of *five* separate motions for summary judgment. As a result, on April 20, 2011, this Court issued an Order requiring the parties to refile all "pending" summary judgment motions as one motion per party. In its Order, the Court listed all pending summary judgment motions by name and docket number and ordered both parties "to refile **all** pending summary judgment motions (listed above) as **one** motion, encompassing any summary judgment arguments they have" by May 2, 2011. *See* April 20, 2011 Minute Order (Dkt. 206).

Nonetheless, MFI's new motion included a new argument for summary judgment on Plaintiffs' second cause of action. MFI does not dispute that this claim was not originally filed as a motion for summary judgment. Accordingly, the Court deems it late-filed and not in compliance with its scheduling orders. Therefore, MFI's request for partial summary judgment as to Plaintiffs' second cause of action is DENIED.[10]

### D.  Exhaustion

Finally, MFI argues that Plaintiffs failed to exhaust the administrative notice requirements on their Private Attorney General ("PAGA") claims on behalf of the employees at the Tracy, California Distribution Center.

PAGA was enacted to alleviate the burden on the Labor and Workforce Development Agency ("LWDA") to enforce California Labor Code ("Labor Code") violations. Cal. Labor Code § 2698(d). Accordingly, PAGA allows an aggrieved employee to bring a civil action against an employer for Labor Code provisions. *See* Cal. Labor Code § 2699. In order to bring such a PAGA action, an aggrieved employee must first give written notice through certified mail to the LWDA and the employer of the alleged violations. Cal. Labor Code § 2699.3(a)(1). That notice must include the "facts and theories to support the alleged violation." *Id.* If the LWDA gives notice that it does not intend to investigate, as was the case in this matter, or fails to

respond within 33 days, then the employee may bring a civil action under PAGA.  *Id.*

Plaintiffs' FAC includes a letter sent by Plaintiffs' counsel to the LWDA on March 12, 2010 (the "LWDA Letter"), which they argue provided the requisite notice of Plaintiffs' claims. *See* FAC, Exh. A. The letter states that Plaintiffs' counsel is representing "a group of trucker drivers who worked for McLane Food Service Inc." and the letter is "notice, and a request, pursuant to California Labor Code § 2699.3 that [the LWDA] investigate the claims in this impending civil action." *Id.*  The letter goes on to request that Plaintiffs receive notice if the LWDA chooses not to investigate the allegations, so that they may file a civil action to include PAGA claims.   In the letter, counsel described the action as being "brought on behalf of thirty-seven truck drivers," whom it then names.  *Id.* The letter also notes that MFI employed Plaintiffs "as truck drivers out of its Southern California distribution center . . . ." *Id.*  Plaintiffs received a response from the LWDA following their letter indicating that it would not investigate the alleged violations, and therefore authorizing Plaintiffs to bring their PAGA claims.  FAC, ¶ 36; Exh. B.

Plaintiffs' FAC asserts that the PAGA claims are brought on behalf of all "aggrieved employees, whether a party to this action or not . . . ."  *See* FAC, ¶ 43.  MFI argues, however, that the LWDA letter suggests that the action was limited in nature, and that Plaintiffs' reference to thirty-seven named Plaintiffs, all in the southern California area, necessarily restricted the action to that area and to those plaintiffs.  It insists that Plaintiffs's LWDA letter fails to support a PAGA claim on behalf of aggrieved employees at the Tracy Distribution Center, which is located in northern California.  Plaintiffs respond by contending that under California Labor Code § 2699(c) *an* aggrieved employee or representative must exhaust administrative remedies by providing notice to the LWDA–but not *all* employees.  As a result, those thirty-seven plaintiffs could assert PAGA claims on behalf of aggrieved employees.  *See* Plaintiffs' Opp'n to DMSJ, 18-20.  Each additional plaintiff did not need to exhaust.  This Court agrees.

It is indisputable that PAGA allows an aggrieved employee or representative to provide notice on behalf of other aggrieved employees; indeed, the entire purpose of PAGA was to grant individual citizens the right to pursue civil penalties that typically only the state could bring.  *See*

Cal. Labor Code § 2699. The language of PAGA explains that it allows civil penalties to "be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees . . . ." Cal. Labor Code § 2699(a). An aggrieved employee is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Labor Code § 2699(c). Thus, to the extent that MFI argues that Plaintiffs were *required* to list every aggrieved employee upon whom their action was brought, their argument is rejected.

At the same time, though, plaintiffs are required under PAGA to give notice of the "facts and theories to support the alleged violation." Cal. Labor Code § 2699.3(a)(1). Plaintiffs chose to do so in a specific way; their LWDA letter named thirty-seven plaintiffs who were based out of southern California. *See* FAC, Exh. A. Yet the mere fact that Plaintiffs chose to name specific employees does not suggest that Plaintiffs were required to name all aggrieved employees; certainly they could bring claims on behalf of other employees. Indeed, bringing claims on behalf of other aggrieved employees is the very premise of PAGA. *See Arias v. Superior Court*, 46 Cal. 4th 969 (2009) (explaining that because a PAGA claim is brought by citizens acting as private attorneys general, any rulings finding an employer liable for labor violations are binding on that employer and nonparty employees may then benefit from such rulings).

MFI offers no authority suggesting that PAGA's requirement that employees provide in their notice "facts and theories to support [an] alleged violation" necessitates inclusion of every potential fact or every future theory. To the contrary, the plain meaning of those words suggests that Plaintiffs were required to put forward sufficient facts to support their claims of labor violations by MFI. Indeed, MFI does not dispute that they did so. Instead, MFI seeks to bind Plaintiffs to those facts and theories exactly as laid out–even though, of course, no discovery has yet occurred, since Plaintiffs could not file suit until providing notice to NWLA and determining if the agency would investigate. Such a result is absurd and would undermine the principles of PAGA.

Moreover, no due process concerns are triggered by the failure of the Tracy employees to

provide notice to the NWLA. As this Court previously noted in its Order Denying Motion for Partial Judgment on the Pleadings, "the text of the PAGA statute defines an 'aggrieved employee' as 'any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.'" Order Denying Motion for Partial Judgment on the Pleadings (citing PAGA). This Court continued, explaining that "[g]iven the statutory language, a plaintiff cannot recover on behalf of individuals whom the plaintiff has not proven suffered a violation of the Labor Code by the defendant. Thus, Plaintiffs in this case must 'prove Labor Code violations with respect to each and every individual on whose behalf Plaintiff seeks to recover civil penalties.'" *Id.* (citing *Hobbs-Rines v. Seagate Technologies, LLC*, U.S. Dist. LEXIS 19283, *4 (N.D. Cal. March 2, 2009)). In other words, just because Plaintiffs did not include the Tracy distribution center employees in its letter to the NWLA does not mean those plaintiffs are a "free ride." Plaintiffs still remain obligated to show violations as to those specific employees; but this does not indicate that their *notice to the NWLA* should have included every plaintiff later included in the suit.

To require Plaintiffs to have separately brought notice under PAGA for the Tracy distribution center employees would also have been futile. It is undisputed that the LWDA indicated a lack of intention to investigate this action after receiving Plaintiffs' counsel's letter. *See* FAC, Exh. B. Given that the LWDA demonstrated no interest in investigating this case, it is implausible that the agency would have been responsive to an additional letter asserting the same facts and theories as to the Tracy, California distribution center alone. The addition of a few plaintiffs from Tracy, California does little to change the merits of the case. Thus, requiring Plaintiffs to separately exhaust under PAGA as to only the Tracy, California distribution center employees' claims would have been futile at best and absurd at worst.

Finally, to require employees who supply specific information in a notice-providing letter to an agency to then draft new letters each time they learned of future plaintiffs or additional facts would place an enormous obstacle to pursuing PAGA claims and would require employees to conduct what would amount to discovery prior to even requesting an investigation from the NWLA. Furthermore, it would disincentivize employees from providing many facts in their

notice letters, and would thus leave employers with far less notice of claims to be pursued than would a mere lack of notice of all potential plaintiffs. Such a result would pervert the purposes of PAGA and of its notice requirements. As long as Plaintiffs provide reasonably details facts and theories sufficient to comply with PAGA's administrative procedures, which they have done here, the addition of future employees will not suggest a failure to exhaust.

As a result, MFI's request for summary judgment as to this issue is DENIED.[11]

## IV. Disposition

For the reasons stated above, the Court rules as follows:

(1) The Court DENIES IN FULL Defendant MFI's Motion for Partial Summary Judgment;

(2) The Court GRANTS Plaintiffs' Motion for Summary Judgment on the lawfulness of the Piece-rate Pay Formula;

(3) The Court DENIES Plaintiffs' Motion for Summary Judgment as to a finding that Plaintiffs' rest and meal break claims are not preempted under the FAAAA.

IT IS SO ORDERED.

DATED: July 8, 2011

_David O. Carter_

_____

DAVID O. CARTER
United States District Judge

---

[11] The Court notes that MFI did not raise this issue nor did it content any tentative holding of the Court as to this claim at oral arguments.